MATTHEW C. HELLAND (SBN 250451)
helland@nka.com
NICHOLS KASTER, LLP
One Embarcadero Center, Suite 720
San Francisco, California 94111
Telephone: 415-277-7235
Facsimile: 415-277-7238

ATTORNEYS FOR PLAINTIFF AND
THE PUTATIVE CLASSES

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK GAVIDIA, on behalf of himself, those similarly situated, the proposed Rule 23 Class, and on behalf of the general public, <br><br> Plaintiff, <br><br> v. <br><br> SMART CIRCLE INTERNATIONAL, LLC, LOOPED IN, INC., SIGNALS UNITED, INC., ONPOINT, OC, INC., and DOES 1 through 50 inclusive, <br><br> Defendants. | Case No. 8:16-cv-00922 <br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUCNTIVE RELIEF** <br><br> **(1) Failure to Pay Minimum Wage in Violation of the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*)** <br><br> **(2) Failure to Pay Overtime Compensation in Violation of the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*)** <br><br> **(3) Failure to Pay Minimum Wages in Violation of California Law (Cal. Labor Code §§ 1182.12, 1194, and 1198, and IWC Wage Order(s))** <br><br> **(4) Failure to Pay Overtime Compensation in Violation of California Law ((Cal. Labor Code §§ 510, 1194, and 1198, and IWC Wage Order(s))** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**(5) Waiting Time Penalties (Cal. Lab. Code §§ 201–203)**

**(6) Failure to Provide Itemized Wage Statements (Cal. Lab. Code § 226)**

**(7) Failure to Provide and/or Authorize Meal and Rest Periods (Cal. Lab. Code §§226.7, 512)**

**(8) Violation of California Business and Professions Code §17200,** *et seq.***)**

**JURY TRIAL DEMANDED**

CLASS AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

**PRELIMINARY STATEMENT**

1.     This case is about Defendant Smart Circle International, LLC ("Smart Circle") and the California-based companies with which it contracts—such as Defendants Looped In, Inc. ("Looped In"), Signals United, Inc. ("Signals United") and OnPoint OC, Inc. ("OnPoint") and DOES 1 through 50 inclusive (collectively, "Defendants")—willfully misclassifying their employees as "independent contractors," failing to pay these employees at least the minimum wage for all hours worked, and failing to pay their employees any overtime compensation for hours worked over forty in each work week. Plaintiff Frank Gavidia ("Plaintiff") is one such employee.

2.     Accordingly, Plaintiff, on behalf of himself and other similarly situated current and former employees of Smart Circle and the companies it contracts with to gather applications from consumers who wish to enroll in the government-funded Lifeline Program, including Defendants Looped In, Signals United and OnPoint ("Outreach Agencies") bring this (1) Collective Action against Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* for failure to pay minimum wages and overtime, and (2) California Rule 23 Class Action against Defendants under California Labor Laws, for failure to pay minimum wages and overtime, as well as failure to provide meal and rest breaks and failure to provide itemized wage statements.

3.     Defendants have willfully engaged in a pattern, policy, and practice of unlawful conduct for the actions alleged in this Complaint, in violation of the federal and state rights of the Plaintiff, the FLSA Collective, and the members of the proposed California Rule 23 Class.

**THE PARTIES**

**I.     PLAINTIFFS**

4.     Plaintiff Frank Gavidia is an adult resident of Panorama City, California (Los Angeles County).

5.      Plaintiff worked in Los Angeles, California; Long Beach, California; and throughout Orange County, California, as a field agent for a number of Defendant Smart Circle's Outreach Agencies, including OnPoint, Signals United, and Looped In.

6.      Plaintiff reported directly to OnPoint from approximately October 2014 through December 2014, for Signals United from January 2015 through February 2015, and for Looped In from approximately March 2015 until June 2015.

7.      Plaintiff has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).  His consent form is filed as Exhibit A.

8.      To date, four (4) additional individuals have consented to join this lawsuit has "opt-in" Plaintiffs.  These opt-in Plaintiffs reported directly to Looped In.  These consent forms are filed as Exhibit B.

9.      As detailed below, Plaintiff, those opt-in Plaintiffs referenced above, and members of the FLSA collective defined below are current and former employees, within the meaning of the FLSA, 29 U.S.C. § 203(e)(1), of Defendants Smart Circle, and Looped In, Signals United, and/or OnPoint.

10.      As detailed below, Plaintiff, those opt-in Plaintiffs referenced above, and members of the California Rule 23 class defined below are current and former employees of Smart Circle, and one or more of the other Defendants within the meaning of the California Labor Code.

## II.      **DEFENDANTS**

11.      Defendant Smart Circle is a Delaware limited liability company, with its headquarters at 4490 Von Karman Avenue, Newport Beach, California.

12.      Defendant Looped In is a domestic corporation with its headquarters at 299 West Foothill Boulevard, Suite 112, Upland, California, that does business in this District and throughout California. On information and belief, Looped In is now doing business under the name "50/50 Marketing."

13.     Defendant OnPoint is a domestic corporation with its headquarters at 333 South Anita Drive, Suite 805, Orange, California.

14.     Defendant Signals United is a domestic corporation with its headquarters at 333 South Anita Drive, Suite 805, Orange, California.

15.     Defendants Does 1-50, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously-named Defendants is responsible in some manner for the occurrences herein alleged, and that the damages sustained by Plaintiff, the FLSA Collective, and the Rule 23 Class Members herein alleged were proximately caused by such Doe Defendants.

16.     Defendants operate in interstate commerce by, among other things, providing wireless phone and promotional services nationwide, including in California.

17.     Defendants' gross annual sales made or business done has been $500,000 or greater each year within the applicable time period.

18.     As detailed below, Defendant Smart Circle is or was the employer of Plaintiffs, the FLSA Collective, and the proposed California Rule 23 Class under the FLSA, 29 U.S.C. § 201, *et seq.*, and California Labor Code and the supporting California Wage Orders. Defendant Smart Circle employed these people at all times relevant to the Complaint.

19.     As detailed below, one or more of the Defendants Looped In, Signals United, and/or OnPoint is or was the employer of the Plaintiffs, the FLSA Collective and the proposed California Rule 23 Class under the FLSA, 29 U.S.C. § 201, *et seq.*, and California Labor Code and the supporting California Wage Orders.

20.     The minimum wage and overtime provisions of the California Labor Code and supporting Wage Orders, apply to Defendants and protect the Class Representative and members of the proposed California Rule 23 Class because, for reasons set forth herein, Defendants constitute employers under California's minimum wage and overtime laws and Plaintiffs constitute employees.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

22.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question, 29 U.S.C. § 201, *et seq.*

23.     Venue in the Central District of California is proper pursuant to 28 U.S.C. § 1391 because Defendants Smart Circle, OnPoint, Signals United, and Looped In reside in this District.

24.     Venue in the Central District of California is also proper because a substantial part of the events or omissions giving rise to the claim occurred in the Central District of California.

## FACTUAL ALLEGATIONS

**I.     FACTS RELATED TO THE LIFELINE PROGRAM AND THE ASSURANCE WIRELESS BRAND.**

25.     Plaintiff, on behalf of himself, the FLSA Collective, and the California Rule 23 Class re-allege and incorporate by reference the above paragraphs as set forth herein.

26.     The Lifeline Program was created by Congress in the 1980s to provide phone service to qualifying low-income consumers. The program was meant to ensure that low-income consumers have access to phone service. The program is funded through the Congressionally-created Universal Service Fund, which in turn is funded by contributions from telecommunication providers. In

2005, the program was extended to offer wireless service and phones to low-income consumers, in addition to traditional landlines. These wireless phones are colloquially referred to as "Obama Phones."

27. Private telecommunication companies can be eligible to provide Lifeline services. For each enrollee/subscriber to the Lifeline program, the telecommunication company providing the service receives a monthly subsidy of $9.25 paid from the Universal Service Fund. The $9.25 amount of the subsidy is set by regulation. 47 C.F.R. § 54.403(a)(1).

28. Telecommunication companies who provide Lifeline services are required by regulation to "[p]ublicize the availability of Lifeline service in a manner reasonably designed to reach those likely to qualify for the service." 47 C.F.R. § 54.405(b). The regulation does not further specify or dictate how services are to be publicized or offered.

29. Sprint United Management Company ("Sprint UMC") is one such telecommunication company that offers Lifeline services.

30. Sprint UMC offers these Lifeline services through its brand called Assurance Wireless.

31. Assurance Wireless only offers Lifeline plans to its customers. Assurance Wireless does not rely on retail distribution. In fact, Assurance Wireless services are not sold in retail outlets or online. Instead, Assurance Wireless engages in grassroots outreach and marketing efforts in low-income communities.

32. In order to enroll consumers in the Lifeline Program, Sprint UMC through its Assurance Wireless brand, contracts with Outreach Agencies around the nation to engage in the abovementioned outreach and gather applications from consumers who wish to enroll in the Lifeline Program through Assurance Wireless.

33. Once enrolled with Assurance Wireless, provided they remain eligible for the Lifeline Program, consumers receive a free wireless phone and a preset amount of free talk minutes and free text messages.

34.    Some Outreach Agencies have contracts directly with Sprint UMC and others have subcontracts through intermediary companies.  For example, Defendant Smart Circle contracts directly with Sprint, and in turn, contracts with other Outreach Agencies such as Looped In, Signals United, and OnPoint.

35.    Other Outreach Agencies include, but are not limited to: Red Ten, 2020 Marketing (which became Open Door Marketing), and Red Crown.

36.    Outreach Agencies can pool resources to fulfill their obligations to Sprint UMC and the Assurance Wireless brand.  For example, Outreach Agencies can and do share office space.  Outreach Agencies Signals United and OnPoint, who both contract with Defendant Smart Circle, maintain offices at 333 S. Anita Drive, Suite 805 in Orange, California.

## II.    FACTS RELATED TO SMART CIRCLE'S EMPLOYMENT AND MISCLASSIFICATION OF WORKERS

37.    Plaintiff, on behalf of himself, the FLSA Collective, and the California Rule 23 Class, re-alleges and incorporates by reference the above paragraphs as set forth herein.

38.    Defendant Smart Circle holds itself out as an outsource service company and "a worldwide leader" in "provid[ing] successful sales and marketing solutions for nationally-recognized brands and regional and local businesses."  *See* www.smartcircle.com (last visited Feb. 26, 2016).  Smart Circle states that its network is comprised of distributers and their sales representatives, all of whom work to deliver customized direct marketing campaigns.  *See id.*

39.    One of Smart Circle's customers is Sprint UMC.  Defendant Smart Circle has contracted directly with Sprint, and through their agreement, Smart Circle is to provide grassroots outreach efforts in low-income communities and gather applications for Sprint's Assurance Wireless services.

40.    Smart Circle receives payments from Sprint UMC each time an Assurance Wireless application is collected from its field agents and approved by

-8-

Sprint. For each application gathered by an agent that results in the consumer being enrolled in the program, the agent receives a preset amount of money. See Ex. H. Plaintiffs receive $9 per enrollee. Agents cannot and do not negotiate this amount with Smart Circle. *See id.*

41. Smart Circle receives from Sprint UMC, and provides to its Outreach Agencies, "customizable tools for marketing outreach." See http://assurancewireless.virginmobileusa.com/become-a-partner/ (last accessed Apr. 20, 2016 and screenshot attached hereto as Ex. G).

42. Defendant Smart Circle also receives funds for market development from Sprint.

43. In turn, Defendant Smart Circle elicits help from other Outreach Agencies, who must be approved by Sprint, to gather Assurance Wireless applications for the Lifeline Program.

44. Smart Circle's Outreach Agencies, including OnPoint, Signals United, and Looped In, directly hire workers whose primary job duty is to engage in the above-mentioned outreach to gather applications from consumers for possible enrollment in the Lifeline Program through Assurance Wireless. Smart Circle, together with an Outreach Agency, jointly employs these workers.

45. Plaintiff Gavidia is one such employee; Smart Circle, OnPoint, Signals United, and Looped In jointly employed Plaintiff at all times during his employment gathering applications for the Assurance Wireless Lifeline program.

46. Plaintiff Gavidia and the opt-in Plaintiffs worked for Smart Circle as "distributers" "sales rep," "leader," and "customer representative," and "account managers." Despite these and similar titles, Plaintiff, the FLSA Collective (including the opt-in plaintiffs listed above), and California 23 Class worked in entry-level, low skill jobs.

47.   In fact, Smart Circle does not require that its outreach agencies hire skilled workers, or that these workers have previous experience in sales or promotions, or have executive or training experience of any kind.

48.   Once hired as a "distributer," "account manager," or other similarly-titled position (collectively "agents"), Plaintiff, the FLSA Collective, and California Rule 23 Class are required to undergo training at the direction of Defendant Smart Circle through an online interface offered by Sprint UMC and Assurance Wireless.

49.   In order to get consumers to submit applications for enrollment, agents are sent by Outreach Agencies to certain locations to talk about the free wireless phone program with consumers and help them fill out applications. Among other things, agents are given preprinted "Assurance Wireless Talking Points" to go over with consumers, see Ex. E, as well as informational Assurance pamphlets, see Ex. F, and marketing paraphernalia. Defendant Smart Circle makes these materials available to its Outreach Agencies and requires its Outreach Agencies to have their agents follow these materials.

50.   Smart Circle does not allow its agents the discretion to change the services or phones offered.

51.   Smart Circle does it allow its agents to charge consumers for the phones or services described above.

52.   Further still, Smart Circle does not let its agents actually enroll consumers in the Lifeline Program. Rather, agents are simply to get consumers to fill out an application on an electronic tablet. The application is then submitted to Sprint UMC, who makes the determination of whether to enroll the consumer and provide her a free phone.  Only after enrollment do consumers have the option of purchasing monthly add-ons, such as texting and internet data; those add-ons are not sold by the agents.

53.     Agents are trained on Assurance Wireless' application forms, created by Sprint and made available through Defendant Smart Circle.

54.     Smart Circle requires all Outreach Agencies that it works with to comply with uniform standards, policies, and procedures that it receives from Sprint.

55.     For example, Smart Circle, through its customizable tools provided by Sprint, requires agents to fill out the following information and/or answer the following additional questions:

    a.  First Name

    b.  Last Name

    c.  Your Email Address

    d.  What date did you start as an agent

    e.  Agent Code

    f.  Outreach Agency

    g.  Assigned Geographic Area

    h.  Background check completed passed?

    i.  Tax related paperwork completed (I9, W3/W9, etc.) as needed/required?

    j.  Assurance Wireless training taken and passed?

    k.  Training date

    l.  Have you been trained on the AW Standard Operating Procedures (SOPs)?

    m.  Do you agree to abide by all the rules, regulations, and policies of Assurance Wireless and the Lifeline program and that any violation of the rules, regulations, or policies may result in you being removed from marketing AW services and possibly subject to criminal prosecution?

56.    Smart Circle also distributes "Outreach Agency Program Standard Operating Procedures" to all of its Outreach Agencies, for distribution to the Agents.

57.    Among other things, the Standard Operating Procedures govern "Events and Agent Scheduling," "Agent Appearance," "Event Appearance," "Personnel," "Marketing; Media," and training.

58.    Defendants Smart Circle, and one or more of Defendants Looped In, Signals United, and OnPoint maintained control, oversight, and direction over the operation of Plaintiffs, including the employment practices Plaintiffs must abide by, and were engaged in the employment of agents, including Plaintiffs, members of the FLSA Collective, and the California Rule 23 Class.

59.    Despite the foregoing, Smart Circle classifies its agents as "independent contractors" or otherwise exempt from the FLSA's minimum wage and overtime requirements.

60.    All the agents are employees under the FLSA and California Labor Code.

61.    Similarly, Smart Circle has no requirement that agents be skilled workers, have previous experience in sales or promotions, or have executive or training experience of any kind.

62.    Further, because, among other things, none of the agents engaged in sales or obtained contracts for services within the meaning of the FLSA or California Labor Code, they are not exempt from the FLSA's or California Labor Code's minimum wage and overtime protections.

## IV.    FACTS RELATED TO DEFENDANT LOOPED IN, SIGNALS UNITED AND ONPOINT'S EMPLOYMENT AND MISCLASSIFICATION OF WORKERS

-12-

63.     Plaintiff, on behalf of himself, the FLSA Collective, and the California Rule 23 Class re-alleges and incorporates by reference the above paragraphs as set forth herein.

64.     Defendants Looped In, Signals United, and OnPoint jointly employ agents with Smart Circle.  Plaintiff Gavidia is one such employee, as are members of the FLSA Collective and California Rule 23 Class defined herein.

65.     Owners, management, and agents associate with Looped In, Signals United, and OnPoint interchangeably.  For example, the owner of Looped In, during the times relevant to this Complaint, was Nick Loxely, who had previously been Plaintiff Gavidia's supervisor at Signals United.  The owner of Signals United was, during the time period relevant to this Complaint, Stanley Wang, who previously supervised Plaintiff Gavidia at OnPoint. Nick Loxely and Stanley Wang were both workers at OnPoint before being promoted to "own" their own companies.

66.     Regardless of whether an agent reports to Looped In, Signals United, or OnPoint, all agents' primary job duty is to engaged in the above mentioned outreach to gather and collect applications for Sprint's Assurance Wireless program.

67.     Agents who report to Looped In, Signals United, or OnPoint abide by the same managerial policies, comply with Sprint's Standard Operating Procedures, and are required to work a set schedule.

68.     Looped In, Signals United, and OnPoint have no requirement that agents be skilled workers, have previous experience in sales or promotions, or have executive or training experience of any kind.

69.     Agents are required to undergo training in person at Defendants' offices.

70.     In addition to this training, agents who report to Looped In, Signals United, and OnPoint are required to attend morning meetings. These meetings

consist of motivational talks from upper management, as well as information for boosting Lifeline program applications. These meetings are called "Atmosphere" meetings.

71. Even on Saturdays, managers from Signals United would gather their workers together with workers from Looped In and OnPoint for joint meetings about gathering applications for Sprint's Assurance Wireless Lifeline program.

72. Agents have set schedules at Looped In, Signals United, and OnPoint OC, which are typically 11–12 hours, 5–6 days per week.

73. Agents have no discretion to alter the basic format of their schedules or work day.

74. On average, Plaintiff Gavidia's schedule was 7:00 a.m. to approximately 5:00 p.m., five (5) days per week while he worked for Looped In, Signals United and OnPoint OC.

75. The "Atmosphere" meeting Plaintiff was required to attend typically started at 7:00 a.m. After that meeting, Plaintiff and other agents are sent to geographic locations in the area ("territories") to talk to consumers about enrolling in Lifeline through Assurance Wireless.

76. Agents are required to report back to the office between 5:00 p.m. and 7:00 p.m., for additional meetings that could last until 9:00 p.m.

77. Once back at the office, agents report to management on the number of applications gathered. Management assesses each agent's day, recognizing top performers, and at its discretion, will hold one-on-one meetings with agents to discuss performance.

78. After evening meetings with management conclude, agents are required to sign out at the front desk before they may leave for the day.

79. This daily schedule is specified by Looped In's, Signal United's, and OnPoint's management.

80.　For each application gathered by an agent that results in Sprint enrolling the applicant in its Assurance Wireless Lifeline program, the agent receives $9.

81.　Agents cannot and do not negotiate this amount with Looped In, Signals United, or OnPoint, who issues the agents' paychecks.

82.　Despite the forgoing, Agents who worked for Defendants were classified as "independent contractors" or otherwise exempt from the FLSA's protections, and at times referred to them as "entrepreneurs."

83.　In reality, all agents are employees under the FLSA and California Labor Code.

## VII.　FACTS RELATED TO DEFENDANTS' ILLEGAL PAY SCHEME AND WILLFUL VIOLATIONS OF THE LAW

84.　Plaintiff, on behalf of himself, the FLSA Collective, and the California Rule 23 Class re-alleges and incorporates by reference the above paragraphs as set forth herein.

85.　Aside from a flat rate of $9 per approved application, agents do not receive any compensation for their work from Smart Circle or the Outreach Agencies.

86.　As a result, there were times when agents did not make at least the minimum wage for all hours worked within a work week.

87.　In fact, Defendants routinely required Plaintiff, and members of the FLSA Collective and the California Rule 23 Class, to work without payment of the minimum wage for all hours worked within a work week.

88.　Defendants further required Plaintiff, and members of the California Rule 23 Class, to work more than five hours per day without providing the employee with a meal period of not less than 30 minutes.  When Plaintiff and members of the California Rule 23 Class worked more than 10 hours per day Defendants did not provide a second meal period of not less than 30 minutes.

89.    Similarly, Defendants routinely required Plaintiff, and members of the FLSA Collective and the California Rule 23 Class, to work long hours in excess of eight hours per day and forty hours per week to complete all their job responsibilities.

90.    On these occasions, Defendants did not compensate the agents with payment of one and one-half times their regular rate for all hours over eight per day or forty per work week.

91.    For example, one of Plaintiff Gavidia's paychecks from Looped In was for $66, even though he worked over approximately 50 hours that week.

92.    Defendants are in possession of the pay and time records necessary to perform these calculations for the remainder of Plaintiff's employment and for the FLSA Collective, and the California Rule 23 Class.

93.    This illegal pay scheme violates the FLSA and California Labor Code, which require that employees be paid at least the minimum wage for all hours worked and that they be paid at a rate of not less than one and one-half times the regular rate of pay, for work performed in excess of eight (8) hours per day and forty (40) hours per workweek.

94.    In short, Defendants did not pay Plaintiff, the FLSA Collective, and the California Rule 23 Class all minimum wage and overtime compensation owed.

95.    Additionally, Defendants consistently failed to furnish Plaintiff, as well as members of the California Rule 23 Class, with accurate statements of wages, hours worked, rates paid, and gross wages.

96.    Defendants operated under a common scheme to deprive these agents of overtime compensation and minimum wages by misclassifying them independent contractors or otherwise exempt from minimum wages and overtime.

97.    Defendants were, or should have been aware that Plaintiff, the FLSA Collective, and the California Rule 23 Class performed work that required payment of overtime compensation and minimum wage.

98.   Among other things, the Defendants are sophisticated companies that do business in California and around the country and have access to counsel.

99.   Additionally, both the FLSA and California Labor Code have been in effect for decades, allowing more than ample time for Defendants to come into compliance.

100.   Further, the Defendants hold agents out as their own and knowingly impose rules and requirements on them that exceed that typical of contracting relationships.

101.   Defendants were aware of the hours worked by Plaintiff, the FLSA Collective, and the California Rule 23 Class because Defendants enforced the schedule discussed above, and imposed discipline on those who did not work these required hours.

102.   Additionally, Smart Circle, contracts with Looped In, Signals United, OnPoint, and other Outreach Agencies, and is aware of how many applications are gathered by their agents.

103.   Defendants observed Plaintiff, as well as members of the FLSA Collective, and the California Rule 23 Class working overtime hours to comply with company policy.

104.   Defendants' conduct as alleged in this Complaint was willful and in bad faith.

### FLSA COLLECTIVE ALLEGATIONS

105.   Plaintiff, on behalf of himself and the FLSA Collective re-alleges and incorporates by reference the above paragraphs as set forth herein.

106.   Plaintiff brings the First and Second Claims for Relief on behalf of: "all persons who worked as distributers, account managers, leaders, sales reps, customer representatives, or similar titles, for Outreach Agencies who contract with Smart Circle, including, but not limited to Looped In, Signals United, and OnPoint, and whose job was to gather applications for enrollment in the Lifeline

Program through Assurance Wireless at any time three years prior to the filing of the initial complaint in this action through the date the collective list is prepared."

107.  Plaintiff and the FLSA Collective are victims of Defendants' widespread, repeated, and consistent illegal policies that have resulted in violations of their rights under the FLSA, 29 U.S.C. § 201 *et seq.,* and that have caused significant damage to Plaintiff and the FLSA Collective.

108.  Defendants have willfully engaged in a pattern of violating the FLSA, 29 U.S.C. § 201 *et. seq.* as described in this Complaint in ways including, but not limited to, failing to pay employees a minimum wage and overtime compensation.

109.  Defendants' conduct constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

110.  Defendants are liable under the FLSA for failing to properly compensate Plaintiff and the FLSA Collective, and, as such, notice should be send to the FLSA Collective. There are numerous similarly situated current and former employees of Defendants who have suffered from the common policies and plans of Defendants, including being denied a minimum wage and overtime compensation, and who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## **CALIFORNIA RULE 23 CLASS ALLEGATIONS**

111.  Plaintiff, on behalf of himself and the California Rule 23 Class re-alleges and incorporates by reference the above paragraphs as set forth herein.

112.  As Class Representative, Plaintiff brings the remaining Claims for Relief on behalf of himself and as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The California Rule 23 Class is defined as: "all persons who worked in the state of California as distributers, account managers, leaders, sales reps, customer representatives, and similar titles, for

Outreach Agencies who contract with Smart Circle, including, but not limited to Looped In, Signals United, and OnPoint, and whose job it was to gather applications for enrollment in the Lifeline Program through Assurance Wireless at any time four years prior to the filing of the initial complaint in this action through the date the class list is prepared."

113. The persons in the California Rule 23 Class are so numerous that joinder of all members of the California Rule 23 Class is impracticable. While the precise number of class members has not been determined at this time, on information and belief Defendants have employed in excess of two hundred (200) individuals as agents during the applicable statute of limitations. The Class Representatives and members of the California Rule 23 Class have been equally affected by Defendants' violations of the law.

114. There are questions of law and fact common to the California Rule 23 Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

    i. Whether the Defendants improperly treated the Class Representatives and members of the California Rule 23 Class as independent contractors;

    ii. Whether the Defendants employed Plaintiff and the members of the California Rule 23 Class within the meaning of California law;

    iii. Whether the Defendants failed to pay the Class Representative and members of the California Rule 23 Class a minimum wage in violation of California Labor Code § 1182.12;

    iv. Whether the Defendants failed to pay the Class Representative and members of the California Rule 23 Class overtime compensation in violation of California Labor Code § 510, and supporting Wage Orders.

-19-

v.  Whether the Defendants failed to pay the Class Representative and members of the California Rule 23 Class who are no longer employed by Defendants their final wages when due, in violation of California Labor Code § 202, and whether these individuals are entitled to waiting time penalties under California Labor Code § 203;

vi.  Whether the Defendants failed to furnish the Class Representative and the members of the California Rule 23 Class with accurate statements of wages, hours worked, rates paid, and gross wages, in violation of California Labor Code § 226;

vii.  Whether Defendants' conduct violated the California Unfair Practices Act set forth in the Business and Professions Code § 17200 *et seq.* by violating the state and federal laws as set forth herein;

viii.  The proper measure of damages sustained by Plaintiff and the California Class; and

ix.  Whether Defendants' actions were "willful."

115.  The Class Representative's claims are typical of those of the members of the California Rule 23 Class. The Class Representative, like the other members of the California Rule 23 Class, was subjected to Defendants' policies and willful practices of refusing to pay a minimum wage and overtime. The Class Representative and members of the California Rule 23 Class have sustained similar injuries as a result of the Defendants' actions.

116.  The Class Representative will fairly and adequately protect the interests of the California Rule 23 Class. The Class Representative has retained counsel experienced in complex wage and hour class and collective action litigation. There are no conflicts between the Class representative and the class he seeks to represent.

117.   This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members, and a class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because in the context of wage and hour litigation, individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to the Defendants' policies. There do not appear to be any difficulties in managing this class action.

118.   The Class Representative intends to send notice to all members of the California Rule 23 Class to the extent required by Fed. R. Civ. P. 23.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF—MINIMUM WAGES

## FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 *ET SEQ.*

## 29 U.S.C. §§ 201 *ET SEQ.*

### (On behalf of Plaintiff and the FLSA Collective)

119.   Plaintiff and Proposed Class Representative, on behalf of himself, and the FLSA Collective, re-alleges and incorporates by reference the above paragraphs as set forth herein.

120.   This claim arises from Defendants' willful violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*, for failure to pay a minimum wage to Plaintiff and members of the FLSA Collective to which they were entitled.

121.   At all relevant times, Defendants were each an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Plaintiff and each member of the FLSA Collective Class worked for Defendants.

122.   The minimum wage provisions of the FLSA, 29 U.S.C. § 201, *et. seq.*, apply to Defendants and protect Plaintiff and the FLSA Collective.

123.   Plaintiff has consented in writing to be a part of this action, pursuant to 29 U.S.C. § 216(b), as have at least four (4) other people. (See Exs. A and B.) As this case proceeds, it is likely that other individuals will sign consent forms and join as plaintiffs.

124.   Pursuant to the FLSA, 29 U.S.C. § 206, Plaintiff and the FLSA Collective Plaintiffs were entitled to be compensated at a rate $7.25 per hour at all applicable times.

125.   Defendants, pursuant to their policies and practices, refused and failed to pay a minimum wage to Plaintiffs and the FLSA Collective.

126.   By failing to compensate Plaintiff and the FLSA Collective, Defendants violated, and continue to violate, their statutory rights under FLSA, 29 U.S.C. § 206.

127.   Plaintiff, on behalf of himself and the FLSA Collective, seeks damages in the amount of their respective unpaid wages, liquidated damages as provided under the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems proper.

128.   Plaintiff, on behalf of himself and the FLSA Collective, seek recovery of attorney's fees and costs to be paid by Defendants as provided by the FLSA, 29 U.S.C. § 216(b).

**<u>SECOND CLAIM FOR RELIEF—OVERTIME COMPENSATION</u>**

**<u>FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 *ET SEQ.*</u>**

<u>(On behalf of Plaintiff and the FLSA Collective)</u>

129.   Plaintiff and Proposed Class Representative, on behalf of himself and the FLSA Collective re-alleges and incorporates by reference the above paragraphs as set forth herein.

130.   This claim arises from Defendants' willful violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*, for failure to pay overtime compensation to Plaintiff and members of the FLSA Collective to which they were entitled.

131.   At all times relevant, Defendants have been, and continue to be, an "employer" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 201, et. seq.

132.   Pursuant to the FLSA, 29 U.S.C. § 207, Plaintiff and members of the FLSA Collective Plaintiffs were entitled to be compensated at a rate of at least one-and-one-half times the minimum wage of $7.25 for all hours worked over forty in one work week.

133.   Defendants, pursuant to their policies and practices, refused and failed to pay overtime wages to Plaintiff and the FLSA Collective.

134.   By failing to compensate Plaintiff and the FLSA Collective, Defendants violated, and continue to violate, their statutory rights under FLSA, 29 U.S.C. § 207.

135.   The forgoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255, without a good faith or reasonable basis.

136.   Plaintiff, on behalf of himself and the FLSA Collective, seeks damages in the amount of their respective unpaid wages, liquidated damages as provided under the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems proper.

137.   Plaintiff, on behalf of himself and the FLSA Collective, seeks recovery of attorney's fees and costs to be paid by Defendants as provided by the FLSA, 29 U.S.C. § 216(b).

### **THIRD CLAIM FOR RELIEF**

### **CALIFORNIA STATE LABOR CODE—MINIMUM WAGES**

#### **Cal. Labor Code § 1182.12**

<u>(On Behalf of Plaintiff and the California Rule 23 Class)</u>

138.   Plaintiff and Proposed Class Representative, on behalf of himself and the California Rule 23 Class, re-alleges and incorporates by reference the above paragraphs as set forth herein.

139.   This claim arises from Defendants' willful violation of the California Labor Code, § 1182.12, for failure to pay a minimum wage to Plaintiff and members of the California Rule 23 class.

140.   At all times relevant, Defendants have each been, and continue to be, an "employer" within the meaning of the California Labor Code.

141.   The minimum wage provisions of the California Labor Code apply to Defendants and protect Plaintiff and the members of the California Rule 23 Class.

142.   Pursuant to California Labor Code § 1182.12, Plaintiff and the California Rule 23 class were entitled to be compensated at a rate of at least $8.00 prior to July 1, 2014, $9.00 per hour between July 1, 2014 and December 31, 2016, and $10.00 per hour from January 1, 2016 to the present.

143.   Defendants, pursuant to their policies and practices, refused and failed to pay a minimum wage to Plaintiff and the California Rule 23 Class.

144.   By failing to compensate Plaintiff and the California Rule 23 Class, Defendants violated, and continue to violate, the statutory rights of the Plaintiff and the California Rule 23 Class under the California Labor Code.

145.   The forgoing conduct, as alleged, constitutes a willful violation of the California Labor code without a good faith or reasonable basis.

146.   Plaintiff, on behalf of himself and the California Rule 23 Class, seeks damages in the amount of their respective unpaid wages, liquidated damages as provided under the California Labor Code, interest, and such other legal and equitable relief as the Court deems proper.

147.   Plaintiff, on behalf of himself and the California Rule 23 Class, seeks recovery of attorney's fees and costs to be paid by Defendants as provided by the California Labor Code.

## FOURTH CLAIM FOR RELIEF

### CALIFORNIA STATE LABOR CODE—OVERTIME COMPENSATION

### Cal. Wage Order No. 4, Cal. Labor Code §§ 510, 1194

(On Behalf of Plaintiff and the California Rule 23 Class)

148.   Plaintiff and Proposed Class Representative, on behalf of himself and the California Rule 23 Class, re-alleges and incorporates by reference the above paragraphs as set forth herein.

149.   At all times relevant to this action, Plaintiff and the California Class were employed by Defendants within the meaning of the California Labor Code.

150.   By the course of conduct set forth above, Defendants violated Cal. Labor Code §§ 510 and 1194.

151.   The California Labor Code requires employers, such as Defendants, to pay overtime compensation to all non-exempt employees.

152.   Plaintiff and the California Class were non-exempt employees entitled to be paid proper overtime compensation for all hours worked.

153.   During the relevant statutory period, Plaintiff and the California Class worked in excess of eight hours in a work day and/or forty hours in a work week for Defendants.

154.   During the relevant statutory period, Defendants failed and refused to pay the Plaintiff and the California Class proper overtime compensation for overtime hours worked.

155.   Defendants had a policy and practice of failing and refusing to pay proper overtime pay to Plaintiff and the California Class for their hours worked.

156.   As a result of Defendants' failure to pay wages earned and due, Defendants violated the California Labor Code.

157.   As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff and the California Class have sustained damages, including loss of earnings for hours of overtime worked on behalf of Defendants, prejudgment interest, and attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF

### CALIFORNIA WAGE PAYMENT PROVISIONS OF LABOR CODE

### Cal. Labor Code §§ 201, 202, & 203

(On Behalf of Plaintiff and the California Rule 23 Class)

158.   Plaintiff, on behalf of himself and the California Rule 23 Class, re-alleges and incorporates by reference the above paragraphs as set forth herein.

159.   California Labor Code §§ 201 and 202 require Defendants to pay employees all wages due within the time specified by law. California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employer must continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

160.   Plaintiff and the California class are entitled to unpaid overtime compensation, but to date have not received all such compensation.

161.   As a consequence of Defendants' willful conduct in not paying proper compensation for all hours worked, Plaintiff and the California Class are entitled to up to thirty days' wages under Labor Code § 203, together with interest thereon, and attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF

### CALIFORNIA REST BREAK AND MEAL PERIOD PROVISIONS

### Cal. Wage Order No. 4; Cal. Labor Code §§ 226.7 et seq., 512

(On Behalf of Plaintiff and the California Rule 23 Class)

162.   Plaintiff, on behalf of himself and the California Rule 23 Class, re-alleges and incorporates by reference the above paragraphs as set forth herein.

163.   California Labor Code § 512 prohibits an employer from employing an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, or for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes.

164.   Section 11 of Wage Order No. 4 provides (and at all relevant times hereto provided) that if an employer fails to provide an employee a meal period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided

165.   Section 12 of Wage Order No. 4 provides (and at all times relevant hereto provided) that every employer must authorize and permit all employees to take a 10-minute rest period per four (4) hours of work.  If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

166.   California Labor Code Section 226.7 further prohibits an employer from requiring any employee to work during any meal or rest period mandated by an applicable IWC wage order, and provides that an employer that fails to provide an employee with a required rest break or meal period shall pay that employee one additional hour of pay at the employee's regular rate of compensation for each work day that the employer does not a complaint meal or rest period.

167.   Defendants knowingly failed to provide Plaintiff and the California Rule 23 class with meal periods as required by law, and knowingly failed to authorize and permit Plaintiff and the California Rule 23 Class to take rest periods as required by law. Plaintiff and the California Rule 23 Class are therefore entitled to payment of the meal and rest period premiums as provided by law.

**SEVENTH CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA WAGE STATEMENT REQUIREMENTS**

**Cal Wage Order No. 4; Cal. Labor Code § 226**

(On Behalf of Plaintiff and the California Rule 23 Class)

168.   Plaintiff, on behalf of himself and the California Rule 23 Class, re-alleges and incorporates by reference the above paragraphs as set forth herein.

169.   Defendants knowingly and intentionally failed to provide timely, accurate, itemized wage statements including, inter alia, hours worked, to Plaintiff and the California Rule 23 Class in accordance with Labor Code § 226(a) and the IWC Wage Orders. Such failure caused injury to Plaintiff and the California Class, by, among other things, impeding them from knowing the amount of wages to which they were and are entitled.

170.   Plaintiff and the California Rule 23 Class are entitled to and seek injunctive relief requiring Defendants to comply with Labor Code 226(a) and further seek the amount provided under Labor Code 226(e), including the greater of all actual damages or fifty dollars for the initial pay period in which a violation occurs and one hundred dollars ($100) for each violation in a subsequent pay period.

**EIGHTH CLAIM FOR RELIEF**

**CALIFORNIA UNFAIR COMPETITION LAW**

**Cal. Bus. & Prof'l Code §§ 17200 et seq.**

(On Behalf of Plaintiff and the California Class)

171.   Plaintiff, on behalf of himself and the California Rule 23 Class, re-alleges and incorporates by reference the above paragraphs as set forth herein.

172.   The foregoing conduct, as alleged, violates the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq. The UCL prohibits unfair competition by prohibiting, inter alia, any unlawful or unfair business acts or practices.

173.   Beginning at a date unknown to Plaintiff, but at least as long ago as the year 2012, Defendants committed acts of unfair competition, as defined by the UCL, by, among other things, engaging in the acts and practices described herein. Defendants' conduct as herein alleged has injured Plaintiff and the California Class by wrongfully denying them earned wages, and therefore was substantially injurious to Plaintiff and the California Class.

174.   Defendants engaged in unfair competition in violation of the UCL by violating, inter alia, each of the following laws. Each of these violations constitutes an independent and separate violation of the UCL:

    a.  Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.;

    b.  California Labor Code §§ 510 & 1194; and

    c.  California Labor Code §§ 226.7 & 512.

175.   Defendants' course of conduct, acts, and practices in violation of the California laws mentioned in the above paragraph constitute a separate and independent violation of the UCL. Defendants' conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition.

176.   The harm to Plaintiff and the California Class in being wrongfully denied lawfully earned wages outweighed the utility, if any, of Defendants' policies or practices and therefore, Defendants' actions described herein constitute an unfair business practice or act within the meaning of the UCL.

177.   Pursuant to Business and Professions Code § 17200 et seq., Plaintiff and the California Class are entitled to restitution of the overtime earnings and other unpaid wages alleged herein that were withheld and retained by Defendants during a period that commences four years prior to the filing of this action, a permanent injunction requiring Defendants to pay required wages, an award of attorneys' fees pursuant to Code of Civil Procedure § 1021.5 and other applicable law, and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all members of the FLSA Collective Class, prays for relief as follows:

A.   Designation of this action as a collective action on behalf of Plaintiff and those similarly situated and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all those similarly situated apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consent forms pursuant to 29 U.S.C. § 216(b);

B.   Judgment that Plaintiff and those similarly situated are non-exempt employees entitled to protection under the FLSA;

C.   Judgment against Defendants for violation of the overtime provisions of the FLSA;

D.   Judgment that Defendants' violations as described above were willful;

E.   An award in an amount equal to Plaintiff's and the Collective's unpaid back wages at the applicable overtime rate;

F.    An award to Plaintiff and those similarly situated for the amount of unpaid wages owed, liquidated damages and penalties where provided by law, and interest thereon, subject to proof at trial;

G.   An award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216 and/or other applicable laws;

H.   An award of prejudgment interest to the extent liquidated damages are not awarded;

I.    Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

J.      For such other and further relief, in law or equity, as this Court may deem appropriate and just.

WHEREFORE, Plaintiff, on behalf of himself and all members of the California Rule 23 Class, prays for relief as follows:

A.      Unpaid minimum wages, overtime wages, other due wages, injunctive relief, and unpaid meal and rest premiums pursuant to California law;

B.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

C.      Designation of Plaintiff as representative of the California Class, and Counsel of record as Class Counsel;

D.      Appropriate equitable relief to remedy Defendants' violations of state law;

E.      Appropriate statutory penalties;

F.      An award of damages, liquidated damages, and restitution to be paid by Defendants according to proof;

G.      Attorneys' fees and costs of suit, including expert fees pursuant to Cal. Labor Code §§ 1194, and California Code of Civil Procedure § 1021.5;

H.      Pre-judgment and post-judgment interest, as provided by law; and

I.      Such other equitable relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

178.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

1     Dated: May 20, 2016                  **NICHOLS KASTER, LLP**

2

3                                     By:     s/ Matthew C. Helland
                                             Matthew C. Helland

CLASS AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF